UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

CIVIL ACTION NO. 3:04CV-245-H

KENDRA O'BANNON                                                                      PLAINTIFF

V.

UNIVERSITY OF LOUISVILLE                                                          DEFENDANT

**MEMORANDUM OPINION**

Kendra O'Bannon ("Plaintiff") alleges that her former employer, University of Louisville ("Defendant"), discriminated against her based on her race in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, and the Kentucky Civil Rights Act, KRS 344.  All discovery is complete.  Defendant has moved for summary judgment.

Plaintiff has presented a comprehensive and well-organized defense of her claim. Nevertheless, both sides may have lost track of the real issue within the formalistic responses concerning a prima facie case.  That real issue is whether any reasonable inference in the record suggests that racial discrimination was the Defendant's reason for not reclassifying Plaintiff's job.  *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 153 (2000) ("ultimate question in every . . . claim of disparate treatment is whether the plaintiff was the victim of intentional discrimination").  After thorough consideration, the Court finds no such inferences and sustains Defendant's motion.

I.

Plaintiff is an African-American female.  In August 2000, she began working as a

Program Assistant I in the Employment Services unit of Defendant's Human Resources Department ("HR"). Plaintiff's position was classified "NB" on Defendant's job classification scale, corresponding to a wage of $8.60 per hour. In early 2001 Plaintiff requested that her job be reclassified to a higher level, "NC," with higher corresponding pay. Her supervisor, Sandra Fortner, informed her that Pat Magruder, Compensation Coordinator, declined to reclassify the position.

In late 2002, Defendant began preparing for a January, 2003, reorganization of the HR Department. Principally, Defendant planned to combine two units, Employment Services/Representatives and Compensation, into one unit called "Employment Services." The reorganization would eliminate some positions, including that of Program Assistant II in the Compensation unit, held by Bonnie Cissell. In October, 2002, Plaintiff began training to assume several of the duties of the Program Assistant II position.[1] Beginning January, 2003, she would perform those duties in addition to her existing duties as Program Assistant I. In late 2002, she asked her supervisor Stacey Gardner for reclassification to a higher level in light of her new duties. Gardner denied that request because, as she states, the Vice President of Human Resources, Julien Carter, told her that no reclassifications would take place during the early stages of the reorganization.

In March, 2003, Plaintiff again requested reclassification. While that request was pending, Plaintiff received an unsatisfactory job evaluation for 2002. Because of the evaluation, Plaintiff was placed on a Performance Improvement Plan beginning April 28, 2003, and

---

[1] There is significant factual dispute over how many of Cissell's duties Plaintiff assumed. Plaintiff concedes she did not assume the job in its entirety, but maintains that she assumed most of the duties.

2

scheduled to last up to ninety days.  Immediately thereafter, Defendant denied Plaintiff's request for reclassification.  Defendant has cited two reasons for denying Plaintiff's request: (1) Defendant has a policy of waiting six months after a position takes on new duties before considering reclassification, and (2) it would have been inappropriate to reclassify Plaintiff's position while Plaintiff was on a Performance Improvement Plan ("PIP").  Plaintiff was on medical leave from May 5 to June 16.  Her PIP ended ninety days thereafter on September 16, 2003.

In October 2003, Plaintiff submitted her final request for reclassification.  Defendant stated that this request was placed on hold pursuant to the instructions of Julien Carter that all reclassification requests from the new Employment Services unit should be held until the pending arrival of a new manager for that unit.  Defendant hired a new Employment Services manager, Melissa Long-Shuter, in January 2004.  Plaintiff was reclassified to Program Assistant Senior, level "NC," in June 2004, as part of a broad reclassification of the HR Department.

II.

Plaintiff offers no direct evidence of discrimination.  Therefore, she must first establish discrimination through some evidence of disparate treatment.[2]  To establish a prima facie case of disparate treatment, Plaintiff must show that: (1) she is a member of a protected group; (2) she was subjected to an adverse employment decision; (3) she was qualified for the position; and (4)

---

[2] Defendant argues that two of Plaintiff's four claims of discrimination – early 2001 denial, October 2003 denial – are now time-barred because Plaintiff failed to mention them in her EEOC charge.  Plaintiff disagrees for multiple reasons, and points out that even if the two claims are time-barred under Title VII, they still must be analyzed under the Kentucky Civil Rights Act, which has a five-year limitations period.  Defendant does not respond to this argument.  Since Title VII and the Kentucky Civil Rights Act apply the same substantive standards to claims of racial discrimination, *Smith v. Leggett Wire Co.*, 220 F.3d 752, 758 (6th Cir. 2000), the Court will proceed to analyze the merits of each claim.

3

she was treated less favorably than similarly situated non-protected employees. *Peltier v. United States*, 388 F.3d 984, 987 (6th Cir. 2004) (citation omitted). Defendant concedes the first three elements of Plaintiff's prima facie case, but contends that Plaintiff cannot identify any similarly situated individuals who received better treatment.

Plaintiff and Defendant argue about the job details of those who might be similarly situated. However, Plaintiff "need not demonstrate an exact correlation with the employee receiving more favorable treatment in order for the two to be considered 'similarly-situated,'" *McMillan v. Castro*, 405 F.3d 405, 414 (6th Cir. 2005) (citation omitted). In "failure to promote" cases, the Sixth Circuit requires the plaintiff to identify someone of similar duties who requested and received a promotion at the time the plaintiff's request was denied. *Bacon v. Honda of American Mfg., Inc.*, 370 F.3d 565, 575 (6th Cir. 2004). The issue of reclassification presents a slightly different context so that the precise elements of the job are not so relevant or necessary for the "similarly situated" analysis. The Court agrees with Plaintiff that she need not find one with exactly the same job classification in order to show a similarly situated person.[3] Here, the only unique and relevant characteristics of Plaintiff's situation are that (1) she sought a reclassification; and (2) her unit was under reorganization. Plaintiff must merely identify another employee who was allowed reclassification during a reorganization. Any other comparison would have no evidentiary significance.

A.

Plaintiff appears to have abandoned or ignored her initial claim concerning an incident in

---

[3] The reason for this is that the particular characteristics of a position should not be made so unique that it is impossible to find a similarly situated person.

2001. She requested reclassification in 2001. This was prior to reorganization. The record discloses no particular change in Plaintiff's job that would justify such a request, other than a general statement of increased work. Unlike later occasions, Plaintiff's job duties had not been specifically increased. Defendant denied the 2001 request. The record does not disclose a particular reason for the denial. During the briefing, Defendant correctly argues that Plaintiff has not articulated a theory of why this denial involved discrimination. It also said that Plaintiff did not suggest why she was entitled to reclassification and how the denial was somehow a pretext for a discriminatory motive. Plaintiff did not respond to these arguments and appears to have abandoned any claim concerning the 2001 denial. In any event, the complete absence of evidence concerning the incident requires dismissal of any claims related to it.

B.

Plaintiff focuses her attention upon the occasions in 2002 and 2003 when she requested and was denied reclassification. Plaintiff claims she was similarly situated to Bonnie Cissell, a white female. Prior to the merger of the Employment Services and Compensation units in January, 2003, Plaintiff was a Program Assistant I in Employment Services, Cissell a Program Assistant II in Compensation. When the units merged in January, 2003, Cissell's position in Compensation was eliminated, and Plaintiff assumed most of Cissell's duties. Plaintiff remained a Program Assistant I despite her requests for reclassification. Cissell transferred to the position of Program Assistant II in the Fiscal Services unit. In September 2003, Cissell was reclassified from Program Assistant II to Administrative Assistant. However, the Fiscal Services unit was not part of a reorganization. Consequently, reclassification was allowed. Thus, Plaintiff and Cissell faced different circumstances.

5

Plaintiff argues, however, that the positions of Program Assistant I, Program Assistant II, and Administrative Assistant, are all essentially that of administrative assistant "in the classic sense." Thus a Program Assistant I requesting reclassification to Program Assistant II is similarly situated to a Program Assistant II requesting reclassification to Administrative Assistant. Even if that were true, it is irrelevant. Defendant's reason for delaying reclassification was the reorganization rather than the particular job position. Thus, Plaintiff and Cissell applied those duties in the different environments of the Employment Services unit and Fiscal Services unit. The Employment Services unit was in reorganization; the Fiscal Services unit was not. The positions are not identical in the most relevant aspect. *Pierce*, 40 F.3d at 802.

Plaintiff also claims that two new receptionists in the HR Department were similarly situated to her. In June 2003, Defendant created the two new positions and classified them as "NC" (one level higher than Plaintiff's "NB"). Defendant then hired two white females for the positions. Plaintiff did not apply for either position. Plaintiff claims they were similarly situated to her because they performed essentially the same duties as she. Once again, the exact job description is irrelevant. These individuals were not similarly situated. The HR Department positions were not subject to reorganization. Neither position was reclassified. Those were new positions.

Plaintiff also identifies three individuals reclassified in late 2003: Deborah Wilt, Deborah Ashmore, and Martha Thompson, all white females. All proof of record shows that these individuals worked in the Information Technology unit and occupied different positions than Plaintiff (Employment Systems Specialist, Benefits Systems Specialist, and Payroll Systems Specialist, respectively). More important, the Information Technology unit was not involved in

6

a reorganization. Therefore, they are not similarly situated.

Finally, Plaintiff identifies Debbie Kalbfleisch, reclassified in January, 2003. The proof of record shows that Kalbfleisch occupied a different position and was transferred to a different position. Thus, Kalbfleisch is not similarly situated either.

Plaintiff has a simple task: identify another non-African-American whose unit was under reorganization and whose job was reclassified. Plaintiff cannot identify such a person. Therefore, the Court is left with the unavoidable conclusion that Plaintiff cannot establish a prima facie case.

III.

Assuming for the moment that Plaintiff could establish a prima facie case, the burden would shift to Defendant to articulate a legitimate, nondiscriminatory reason for its decision. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-804 (1973). Defendant has articulated such a reason. Defendant says it denied Plaintiff's request for reclassification in late 2002 because it did not want to reclassify any positions during the early stages of the reorganization set for January, 2003, and for six months afterwards. Plaintiff must demonstrate by a preponderance of the evidence that the proffered reason for the employment action is a pretext for discrimination. *Id.* Plaintiff can establish pretext by presenting sufficient evidence that the proffered reasons (1) had no basis in fact, (2) did not actually motivate the decision, or (3) were insufficient to motivate the decision. *Manzer v. Diamond Shamrock Chemicals Co.*, 29 F.3d 1078, 1084 (6th Cir.1994) (citation omitted).

Plaintiff argues that Defendant's justification is false or contrived. Essentially, Plaintiff argues that the policy of holding reclassification requests during reorganizations was a policy

7

created only for Plaintiff. She argues that the policy was not in writing and only appeared in Julien Carter's affidavit filed after his deposition. Plaintiff also questions whether a policy actually existed concerning delays of reclassifications for persons subject to a performance improvement plan.

Despite Plaintiff's vigorous argument, there appears to be almost no evidence supporting an inference that the reclassification policy was concocted as a pretext to discriminate against Plaintiff on account of her race. This is the essential inference for Plaintiff's case to succeed. To be sure, there is no written policy. However, Julien Carter's deposition testimony and affidavit are not subject to the inference that the "policy" was used as a justification only in retrospect. Plaintiff says no one mentioned this policy when her request was denied. Assuming Plaintiff's account to be true, that Defendant has since explained its rationale does not create enough of a conflict to justify any inference of racial discrimination. Finally, Mr. Carter identified four other white employees who received additional duties during the reorganization: Mary Brashear, Paul Eiden, Marion Dunkley, Carolyn James, and Janice Pierce. None of their jobs were reclassified until June, 2004.[4] Thus, the evidence of similarly situated employees appears to show the absence of disparate treatment rather than its presence.

Finally, Defendant says it denied Plaintiff's request in September, 2003, because it wanted to wait until the pending arrival of the new Employment Services manager. Plaintiff claims this reason is pretextual because during late 2003 Defendant reclassified four positions in the Employment Services unit – Cissell, Wilt, Ashmore, and Thompson. As mentioned in the

---

[4] There is no evidence that these individuals requested reclassification of their jobs prior to June, 2004. For purposes of determining whether Defendant applied a different policy to African-Americans than to others, that would not seem to be relevant.

preceding section, however, the proof of record shows that those positions were in other units, Fiscal Services and Information Technology. Thus, Defendant's decision to delay reclassifying pending arrival of a new Employment Services unit manager would have no effect on employees in other units that were not changing managers. Plaintiff offers no other evidence of pretext.[5] That Plaintiff's job was ultimately reclassified during a unit wide reclassification provides support for the existence and application of the policy.

The Court will enter an order consistent with this Memorandum Opinion.

cc: Counsel of Record

---

[5] Also in support of its April, 2003, denial, Defendant states it did not want to send mixed signals to Plaintiff by essentially promoting her while she was on a Performance Improvement Plan for unsatisfactory performance. Plaintiff argues this justification must have been contrived after the fact because one of Defendant's managers has not heard of such a policy and because an internal email from Malinda Durbin, an individual involved in denying Plaintiff's request, suggests that a reclassification should focus on job duties rather than on the quality of the employee currently holding that job. Defendant counters that it never purported to rely exclusively on this justification; rather, as suggested in the email, any concern about not reclassifying Plaintiff while on a PIP was always secondary to the policy of waiting six months for the position to become more settled. On these facts, there appears no evidence of pretext.